UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Hollis J. Larson,                                    Civ. No. 11-2247 (PAM/LIB)

            Plaintiff,

v.                                                   **MEMORANDUM AND ORDER**

Lucinda Jesson, Cal Ludeman, Dennis
Benson, Greg Carlson, Scott Benoit,
David Prescott, Tim Gorr, David Bornus,
Terry Kneisel, Shelby Richardson,
Janine Herbert, Erik Skon, Lou Stender,
Nancy Johnston, Barry Anderson,
Marnie Dollinger, Jim Lind, Steve
Sajdak, Susan Johnson, Daniel Doran,
Julianna Beavens, Julianna Beattie,
David Hansen, Aubrey Barker, Kevin
Carlson, Laurie Severson, Eric
Hattenberger, Joanne Christenson,
Jessica Olson, Lindsey Deering, Jeanne
Dreher, Justin Wright, Suzanne Eccles,
Ryan Fahland, Joseph Fink, Mark
Kuhlman, Melissa Preteau, Jason
Anderson, Megan Agenter, Steve
Ronning, Troy Swartout, Cory Vargason,
Kevin Schleret, Nathan Johnson, Daniel
Hattenberger, Saul Sheff, Lori Aldrin,
Justin Gamst, Lindsey Fjosne, James
Christensen, Cheryl Halverson, Jane
Stinar, Elizabeth Wyatt, Jenny Abson,
Brooks Midbrod, Brian Ninneman,
Steven Sayovitz, Ronald Fischer, Kristi
Wagner, Jessica Ranem, Jason
Weyrauch, Arthur Miller, Tom Snedker,
William Gullickson, Arthur Christenson,
Cindy Cherro, Kevin Dreher, Kelly
Klimp, Arnold Johnson, Jeff Laine,

Matthew Brown, Corrine Hoadley, Timothy Pederson, Zane Swenson, Johnnie Eargle, James Fetters, Scott Giannini, Louis Kneisel, Brad Brown, Tom Cherro, Carl Lundgren, Pam Sater, Scott Limoseth, Jon Hibbard, Steven Youngs, Marlene Huima, Tami Godbout, Hector Ortiz, Darian Menten, Daniel Werner, Jennifer Gross, Lauren Ripley, Tammy Shelton, Gwen Farrell, Michael Anderson, Steven Janz, Leslie Barfknecht, Gary Grimm, Peter Steen, Jonathon Klingaman, Julie Rose, Matthew Turner, Cornelia Lough, Becky Olson, Alex Radzak, Mindy Siegert, Randy Valentine, Yvette Anderson, Jenifer Chesbrough, Jason Johnson, Chelli Leutschaft-Miller, Ann Linkert, Thane Murphy, Ross Peterson, John Rosasco, Robert Bender, Tresta Brown, Russell Dahl, Randall Gordon, Michael Hennen, Sarah Krueger, Sara Kulas, Ronda White, John Busha III, Charles Cluka, Matthew Dahl, Bonnie Denzler, Luke Eller, Michele Flynn, Eric Gist, Shelby Hall, Craig Berg, John Gorkiewicz, Jennifer Isaacson, Derrick Koecher, Heather Larson, Kenneth Olsen, Jr., Matthew Prachar, David Royer, David Taplin, Terri Barnes, Colleen Bednar, Michael Buetow, Stephanie Danielson, Tara Halverson, Anthony Hollis, Mary Hyke, Darrell Jensen, Jacob Kantonen, Kevin Moser, Kevin Nelson, Richard O'Connor, Sybil Pivoran, Thorne Torgerson, Becky Wekseth, Mike Zimmerman, Nicole Kielte, and Kane Nelson, all sued in their individual capacities, and variously sued in their official capacities,

      Defendants.

    _____

This matter is before the Court on Defendants' Motion to Dismiss the Amended Complaint. For the following reasons, the Motion is granted.

**BACKGROUND**

In 2009 and 2010, at the time of the events giving rise to this litigation, Plaintiff Hollis J. Larson was civilly committed in the Minnesota Sex Offender Program ("MSOP") in Moose Lake, Minnesota.[1] He alleges that nearly 160 MSOP employees and other state corrections officials violated his constitutional rights in numerous ways. Indeed, he appears to have sued nearly every individual who was employed at MSOP during the time in question, as well as state officials in the Minnesota Department of Corrections and Department of Human Services.

In January 2012, this matter was stayed as part of the litigation that addressed the constitutionality of Minnesota's Civil Commitment and Treatment Act, <u>Karsjens v. Piper</u>, No. 11cv3659 (DWF/TNL). In August 2017, this Court determined that the claims raised here were unrelated to those at issue in the <u>Karsjens</u> matter, lifted the stay, and ordered Larson to re-plead. In that Order, the Court noted that Larson's habit of naming multiple individual Defendants in each claim violated both Rule 8(a)(2) and Rule 11(b)(2), and encouraged Larson to comply with the Rule that a complaint be a "short and plain statement" of the claims at issue. (<u>See</u> Docket No. 41 at 3 (quoting Fed. R. Civ. P. 8(a)(2)).) Rather than reduce the number of Defendants or otherwise streamline his pleadings, however, Larson added more Defendants and complexity. (<u>See</u> Am. Compl.

---

[1] Although Larson was released from MSOP at some point, he is once again detained there.

(Docket No. 48).) The Court previously warned Larson that it could sua sponte dismiss without prejudice any pleading for failure to comply with Rule 8. (Docket No. 41 at 4.) The Amended Complaint is not a "short and plain statement" of Larson's claims and is subject to dismissal on that basis alone. For the sake of bringing this long-running litigation to a close, however, the Court will also evaluate Larson's claims on the merits.

In his 80-page Amended Complaint, Larson challenges his confinement in MSOP's high security area ("HSA") from August 9, 2009, to September 1, 2009, and again for shorter periods in late 2009 and 2010. (Am. Compl. ¶¶ 2-3, 48, 71, 133.) He contends that, during his time in the HSA, Defendants violated his rights by, among other things, placing him on administrative restriction pending the outcome of his supervised release revocation hearing (id. ¶ 4); subjecting him to an unclothed visual body cavity search before he was placed in HSA (e.g., id. ¶ 57); threatening him, handcuffing him, and depriving him of food, cleaning supplies, and other necessary items (id. ¶¶ 64, 67, 117, 144, 154); punishing him without a trial (id. ¶ 32); fabricating reports (e.g., id. ¶ 48); not giving him access to legal materials when requested (id. ¶ 15); threatening him with the use of "chemical munitions" (id. ¶ 120); using excessive force against him (e.g., id. ¶¶ 122-23, 25); not sufficiently treating him for injuries he suffered (id. ¶¶ 128-29, 132); cutting off his clothes (id. ¶ 137); providing him with insufficient clothing for the temperature of his cell and cutting out the drawstring in the shorts provided to him (id. ¶¶ 142-43); depriving him of due process by finding him guilty of rule violations without a trial (id. ¶ 156); and promulgating or adhering to unconstitutional unwritten policies related to the treatment of individuals at MSOP (e.g., id. ¶ 158). Larson claims that

4

Defendants violated his rights under the First Amendment (id. ¶ 175), Fourth Amendment (id. ¶ 177), Fourteenth Amendment (id. ¶¶ 181, 183, 185, 189), Sixth Amendment (id. ¶ 187) and under the Minnesota Constitution. He also contends that Defendants' actions constituted an invasion of his privacy (id. ¶ 179), and that certain Defendants defamed him (id. ¶ 33), falsely imprisoned and "tortur[ed]" him (id. ¶ 31), and "committed fraud . . . and misrepresentation" (id. ¶ 34).

## DISCUSSION

Larson first argues that the Court's order requiring Defendants to respond to the Amended Complaint means that the Court determined that he has sufficiently stated claims on which relief can be granted and that none of his claims are subject to immunity defenses. But the Court's determination that Larson had sufficiently complied with 28 U.S.C. § 1915 has no bearing on whether the Amended Complaint survives scrutiny under Rule 12. Moreover, Larson's belief that Defendants have failed to answer the allegations in the Amended Complaint is procedurally incorrect, as civil defendants must bring a motion to dismiss before they file an answer to a complaint. See Fed. R. Civ. P. 12(b) (providing that certain defenses must be raised in a motion filed before filing a responsive pleading). Should Defendants' Motion be denied, they would then be required to answer the Amended Complaint. See Fed. R. Civ. P. 12(a)(4) (providing that a motion to dismiss postpones the time for answering a complaint until 14 days after such motion is denied.)

Rather, Defendants challenge all of Larson's claims under Rule 12, contending that the Amended Complaint fails to plausibly allege any claims on which relief can be granted and that, in any event, they are entitled to immunity from those claims. When considering

5

a Motion to Dismiss, the Court must accept plausible factual allegations as true, Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 660 (8th Cir. 2012), but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to support a claim. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To meet the plausibility standard, a claim must allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Most of Larson's claims stem from his insistence that the Constitution prohibits any punishment of civilly committed individuals. (Pl.'s Opp'n (Docket No. 63) at 14.) This belief, however, is incorrect. The Constitution does not prohibit punishing a civilly committed person for violating the rules of the committing institution. And as Defendants point out, the same concerns that prevent courts from second-guessing disciplinary decisions regarding incarcerated persons—security of the staff and residents of the institution, first and foremost—also apply in the civil-commitment area. See Revels v. Vincenz, 382 F.3d 870, 874 (8th Cir. 2004) ("Although an involuntarily committed patient of a state hospital is not a prisoner per se, his confinement is subject to the same safety and security concerns as that of a prisoner."). Thus, Larson's contention that prison-discipline cases are inapposite to his claims is misplaced.

A. **Official-Capacity and Supervisory Claims**

Larson has sued 25 Defendants in their individual and official capacities.[2] But state officials are immune from official-capacity suits unless the suit seeks prospective

---

[2] These Defendants are Barry Anderson, Leslie Barfknecht, Scott Benoit, Dennis Benson, David Bornus, Greg Carlson, Marnie Dollinger, Tim Gorr, Gary Grimm, Janine Herbert,

injunctive relief. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 n.10 (1989). In other words, a suit must seek to remedy an ongoing or future constitutional violation to be cognizable against state officials in their official capacities. See Ashokkumar v. Elbaum, 932 F. Supp. 2d 996, 1006-07 (D. Neb. 2013) (discussing prospective injunctive relief). Larson's Amended Complaint concerns incidents that occurred eight or nine years ago. Any prospective relief, even if sufficiently pled, would not remedy the violations he has alleged. His official-capacity claims therefore must be dismissed.

As to 14 Defendants,[3] Larson only alleges that they took no action to curb a known pattern of abuse, not that they themselves took an allegedly unconstitutional action against him. (Am. Compl. ¶¶ 158-63.) But liability under 42 U.S.C. § 1983 is personal; there is no supervisor liability for violations of constitutional rights. Iqbal, 556 U.S. at 676. Moreover, "a bare allegation that someone in supervisory authority has been deliberately indifferent, without any specification of that person's contact in fact with the plaintiff, [or] even an explicit charge of inadequate training or supervision of subordinates, is [not] sufficient to state a [§ 1983] claim." Estate of Rosenberg ex rel. Rosenberg v. Crandell, 56 F.3d 35, 38 (8th Cir. 1995). Larson's claims against these 14 Defendants are nothing more

---

Lucinda Jesson, Susan Johnson, Nancy Johnston, Terry Kneisel, Chelli Leutschaft-Miller, Jim Lind, Ann Linkert, Cal Ludeman, Kevin Moser, David Prescott, Shelby Richardson, Steve Sajdak, Laurie Severson, Erik Skon, and Lou Stender. With regard to Defendant Severson, the Amended Complaint alleges both that she is sued in her individual capacity and in her individual and official capacities. (Am. Compl. ¶ 26.) The Court will presume that Larson intended to sue Severson in both her individual and official capacities.

[3] Leslie Barfknecht, Dennis Benson, David Bornus, Tim Gorr, Gary Grimm, Janine Herbert, Lucinda Jesson, Nancy Johnston, Cal Ludeman, David Prescott, Shelby Richardson, Laurie Severson, Erik Skon, and Lou Stender.

than bare allegations that these individuals were deliberately indifferent, and thus fail as a matter of law.

**B.    Conspiracy**

One of Larson's claims is that multiple Defendants engaged in a conspiracy to violate his constitutional rights under 42 U.S.C. § 1985(2) and (3). (E.g., Am. Compl. ¶¶ 57, 85, 89, 108.) Broadly speaking, § 1985 proscribes conspiracies to deprive a person of equal protection of the laws. Therefore, to state a claim for a violation of § 1985, a pleading must allege that the motivating force behind the conspiracy was discrimination on the basis of a suspect classification or characteristic. See Larson ex rel. Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996) (discussing requirement that § 1985 plaintiff prove class-based animus).

Larson argues that sex offenders are a suspect class for purposes of § 1985 because they are subject to discrimination. But merely because individuals share a characteristic and may be subject to differential treatment on the basis of that characteristic does not mean that this differential treatment violates their equal protection rights. "The Equal Protection Clause does not mandate identical treatment of different categories of persons." Plyler v. Doe, 457 U.S. 202, 243 (1982). Only "irrational classification[s]" run afoul of the Equal Protection Clause. U.S. Dep't of Agric. v. Moreno, 413 U.S. 528, 532 (1973). Thus, the Supreme Court has limited the types of classifications that are subject to protection under the Clause to those that share "an immutable characteristic determined solely by the accident of birth," Frontiero v. Richardson, 411 U.S. 677, 686 (1973), or that have been subject to a "history of purposeful unequal treatment, or relegated to such a

8

position of political powerlessness as to command extraordinary protection from the majoritarian political process." San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 28 (1973). Classifications that are subject to protection under the Clause are limited to those such as race, alienage, national origin, religion, and gender; these classes share "some immutable characteristic beyond their control" and "require special protection by the courts because of vast discrimination . . . or their political powerlessness." Gallagher v. City of Clayton, 699 F.3d 1013, 1018 (8th Cir. 2012). No case has held that sex offenders constitute a suspect classification to which the Equal Protection Clause applies, and in fact courts have held the opposite. See, e.g., United States v. Lafferty, 608 F. Supp. 2d 1131, 1144 (D.S.D. 2009) ("Sex offenders are not a suspect or quasi-suspect class."). And "[t]he Supreme Court has rejected the notion that a classification is suspect when 'entry into th[e] class . . . is the product of voluntary action.'" United States v. Coleman, 166 F.3d 428, 431 (2d Cir. 1999) (alteration in original) (quoting Plyler, 457 U.S. at 219 n.19). Larson's claims under § 1985(2) and (3) fail as a matter of law.

**C.     Unclothed Body Search**

Larson argues that MSOP's policy of performing an unclothed body search on a detained individual before that individual enters the HSA violates his Fourth Amendment right to be free from unreasonable searches and seizures. The Eighth Circuit Court of Appeals has noted that "civilly committed persons retain the Fourth Amendment right to be free from unreasonable searches that is analogous to the right retained by pretrial detainees." Beaulieu v. Ludeman, 690 F.3d 1017, 1028 (8th Cir. 2012). And, again, the security concerns implicated in a prison setting are also implicated at MSOP. Revels, 382

9

F.3d at 874. While the question whether searches are reasonably related to the institution's security concerns may be a question of fact, the Court may make the determination as a matter of law if reasonableness is beyond dispute.

"The task of determining whether a policy is reasonably related to legitimate security interests is 'peculiarly within the province and professional expertise of corrections officials.'" Florence v. Bd. of Chosen Freeholders of Cty. of Burlington, 566 U.S. 318, 328 (2012) (quoting Bell v. Wolfish, 441 U.S. 520, 548 (1979)). The Eighth Circuit has determined that unclothed body searches of MSOP detainees before and after the detainees leave a secure area are reasonable and not a violation of the detainees' Fourth Amendment rights. Beaulieu, 690 F.3d at 1030. Similarly, another Judge in this District found reasonable MSOP's policy of unclothed body searches after contact visits. Semler v. Ludeman, No. 09cv732, 2010 WL 145275, at *21 (D. Minn. Jan. 8, 2010) (Montgomery, J., adopting Report and Recommendation of Nelson, M.J.). And still other decisions have found reasonable institutional policies requiring unclothed body searches before detainees are placed in segregated units such as MSOP's HSA. E.g., Brooks v. Gloudemans, No. 16cv77, 2017 WL 237622, at *5 (E.D. Wis. Jan. 19, 2017) (finding reasonable policy of unclothed body searches when inmates were transferred to the segregation unit).

Under these circumstances, the Court finds as a matter of law that MSOP's policy requiring unclothed body searches before detainees are transferred to the HSA is reasonable. Larson has failed to state a claim for a violation of his Fourth Amendment rights.

**D.     Due Process**

Larson contends that Defendants violated his due process rights by confining him in the HSA without notice of the alleged rule violation, a full hearing, including the presentation of evidence and the opportunity for Larson to present opposing evidence, and a written statement of the decision. (Pl.'s Opp'n at 16.) But due process in the context of disciplinary proceedings in a prison or other detention facility is much more limited than Larson believes. See Rudd v Sargent, 866 F.2d 260, 262 (8th Cir. 1989) (noting that "the full panoply of rights due a defendant in [criminal] proceedings . . . does not apply" in the prison or detention-facility context) (quotation omitted). "Not all deprivations of interests protected by the Fourteenth Amendment require full evidentiary hearings before impartial decision-makers . . . ." Goff v. Dailey, 991 F.2d 1437, 1440-41 (8th Cir. 1993).

It is apparent from Larson's own allegations that he challenged MSOP's decision to place him in the HSA, and that at least in one instance, the decisionmakers determined that his HSA placement was unwarranted. (Am. Compl. ¶ 43.) He alleges that the punishment violated his due-process rights because, by the time his appeal was heard, he had already served his punishment and thus the determination of unwarranted punishment was moot. (Id. ¶ 44.) But merely because a decision does not arrive in time to shorten or eliminate punishment does not mean that the punishment violated due process. Due process means just that: a process for challenging a decision. Nor must such a process always occur before the discipline is imposed. See Goff, 991 F.2d at 1442 ("The day-to-day exigencies of running a prison often require prison officials to deprive inmates of protected liberties based only on 'some evidence.'") (quotation omitted). It is apparent from Larson's

allegations that MSOP has a process for individuals to challenge the discipline they receive, and as such, he has failed to state a claim for a violation of his due process rights.

Moreover, the placement in administrative segregation is not a constitutional deprivation actionable under § 1983. Detained individuals have a protected liberty interest only in being free of restraints that "impose[] atypical and significant hardship" in relation to the ordinary incidents of being confined in an institution. Sandin v. Conner, 515 U.S. 472, 484 (1995). Placement in segregation, "even without cause, is not itself an atypical and significant hardship." Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003). Thus, Larson's placement in HSA, at least as described in the Amended Complaint, raises no due process concerns.

### E. First Amendment

Larson contends that his First Amendment rights were violated because he was placed in HSA for alleged "verbal abuse" of staff and because he was "peacefully protesting" what he perceived as injustices at MSOP by refusing to cooperate in treatment and refusing to undergo unclothed body searches. (Pl.'s Opp'n at 17.) Also included in Larson's First Amendment claim is his belief that MSOP unconstitutionally restricted his access to the courts by failing to give him legal papers for more than a week.

"[A] prison inmate retains those First Amendment rights that are not inconsistent . . . with the legitimate penological objectives of the prison system." Pell v. Procunier, 417 U.S. 817, 822 (1974). Although Larson is not a prisoner, he is detained in a facility that has legitimate objectives, including the safety of staff and other detainees, and treatment of the individuals detained. A right to protest, even "peacefully" by passive

12

resistance, as Larson claims to have done here, is contrary to MSOP's legitimate objectives and is therefore not protected by the First Amendment. Verbally abusing corrections officers is likewise not protected by the First Amendment. Goff, 991 F.2d at 1439.

Larson has also failed to state a claim for violations of his right of access to the courts. Even if the one-week delay in giving him access to his legal papers could be characterized as a denial of access to the courts, Larson cannot show that that delay caused him any prejudice. See Owens v. Evans, 878 F.3d 559, 565 (7th Cir. 2017) (finding that access-to-courts claim requires showing that detainee was prejudiced by the alleged violation). Larson claims that the delay prohibited him from filing a petition for a writ of certiorari with the United States Supreme Court, but the court decision he wanted to challenge was an unpublished per curiam dismissal of Larson's appeal as moot. Any petition for a writ of certiorari would have been unsuccessful, and Larson has no claim for denial of access to the courts.

**F.  Excessive Force**

Larson alleges that certain Defendants used excessive force on him on several different occasions. First, on November 26, 2009, eight Defendants[4] "used and/or allowed, and/or failed to prevent, the use of chemical munitions (mace or pepper spray) against plaintiff." (Am. Compl. ¶ 79.) On April 17, 2010, after he refused to go to HSA, Larson

---

[4] Hector Ortiz, Brooks Midbrod, Jeff Laine, Jeanne Dreher, Matthew Brown, Cheryl Peterson, Lori Aldrin, and Corrine Hoadley. There is no Defendant named Cheryl Peterson, however.

alleges that 17 Defendants[5] "drew their 'maglite' flashlights and held them in a threatening manner . . . while advancing upon plaintiff." (Id. ¶ 96.) In that same incident, Larson contends that one Defendant employed "chemical munitions" on him. (Id. ¶ 97.) And because he would not submit to an unclothed body search, the 17 Defendants handcuffed him behind his back and refused to remove the handcuffs. (Id. ¶¶ 98, 101-02.)[6]

On May 26, 2010, Larson was asked to move from one HSA cell to another. (Id. ¶ 119.) According to Larson, when he refused to move, 12 Defendants[7] forced him to the floor, "which has a stucco-like texture, causing multiple and extensive abrasions, contusions, and bruises, to [his] knees, shins, shoulders, elbows, wrists, hands, back, arms, and face." (Id. ¶ 122.) He contends that Defendant Tom Cherro "violently push[ed] his knuckles/fist into [his] 'styloid' nerve bundle (between the lower ear and the jaw) . . . causing injury to [his] head and neck" (id. ¶ 123), and that Defendant Jeffrey Laine "violently appl[ied] pressure to the radial nerve on [his] left forearm" as a form of "gratuitous infliction of pain." (Id. ¶¶ 125-26.)

On June 28, 2010, after Larson allegedly verbally abused staff, he was once again taken to HSA. When he refused to comply with an unclothed body search, he alleges that

---

[5] Jim Lind, Ryan Fahland, Scott Giannini, Kevin Carlson, Daniel Hattenberger, Aubrey Barker, Saul Sheff, Steve Sajdak, Barry Anderson, Daniel Doran, Julianna Beattie, David Hansen, Nicole Kielte, Jason Weyrauch, Arthur Miller, Jonathon Klingaman, and Melissa Preteau.

[6] In all or nearly all of the incidents mentioned in the Amended Complaint, Larson contends that Defendants handcuffed him behind his back and refused to remove the handcuffs for hours at a time.

[7] Steven Youngs, Jon Hibbard, Pam Sater, Mark Kuhlman, Carl Lundgren, Gwen Farrell, Scott Giannini, Scott Limoseth, Louis Kneisel, Jeffrey Laine, Brad Brown, and Tom Cherro.

14

27 Defendants[8] "suit[ed] up" in riot gear and "violently rush[ed] in on plaintiff, violently putting him on the ground and holding him to the ground, and generally violently manhandling him . . . and then cut off his clothes." (Id. ¶ 137.)

Larson asserts that, as a result of these uses of force, he

> experienced extreme neck pain with very limited range of movement, large bruises and contusions on his right and left upper thighs, large bruises and contusions on his right and left knees, large bruises on his back from unknown defendants' knees, bruises and contusions on his left elbow, bruises and contusions on both of his wrists and hands from the handcuffs, with accompanying numbness, and a contusion on his right cheek, for approximately four (4) weeks, leaving scars on his right shin and knee.

(Id. ¶ 131.) After the June incident, Larson alleges that he "received numerous large bruises, abrasions, and contusions" (id. ¶ 140), and that he suffers from mental and psychological trauma. (Id. ¶ 141.)

A detainee alleging the excessive use of force in violation of the Fourteenth Amendment must plead and ultimately prove that the force was applied "maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320-21 (1986).[9] "[T]he extent of injury . . . is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead

---

[8] Jenifer Chesbrough, Troy Swartout, Saul Sheff, Cory Vargason, Tom Snedker, Steven Sayovitz, Yvette Anderson, Jason Johnson, Ross Peterson, Julianna Beavens, Megan Agenter, Matthew Turner, Terry Kneisel, Scott Giannini, Sarah Krueger, Sara Kulas, Nicole Kielte, Kevin Carlson, Marnie Dollinger, Daniel Doran, Michael Hennen, Ronda White, Russell Dahl, John Gorkiewicz, Craig Berg, Kevin or Kane Nelson, and Randall Gordon.

[9] A civilly committed individual's rights to be free of excessive force arise under the Fourteenth, not the Eighth, Amendment. However, as with pretrial detainees, Eighth Amendment jurisprudence is applicable to civilly committed individuals' Fourteenth Amendment excessive-force claims. Andrews v. Neer, 253 F.3d 1052, 1060-61 (8th Cir. 2001).

evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" Hudson v. McMillian, 503 U.S. 1, 7 (1992) (quoting Whitley, 475 U.S. at 321). It is Larson's burden to establish that the force used against him was objectively unreasonable. See Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015).

As an initial matter, the Eighth Circuit has refused to find that the "limited application of capstun [pepper spray] to control a recalcitrant inmate" is excessive force. Jones v. Shields, 207 F.3d 491, 496 (8th Cir. 2000). Larson does not allege that Defendants used a large quantity of pepper spray on him or refused to let him wash off the spray. See Burns v. Eaton, 752 F.3d 1136, 1140 (8th Cir. 2014) (stating that super-soaker quantities of pepper spray or refusing to let a detainee wash it off may be excessive use of force). His allegations regarding pepper spray thus do not rise to a constitutional violation. Similarly, "[t]he application of handcuffs without evidence of any long term damage does not generally state an excessive force claim." Mahamed v. Anderson, No. 07cv4815, 2009 WL 873534, at *3 (D. Minn. Mar. 30, 2009) (Montgomery, J.). And at the time of the events described in the Amended Complaint, courts had found that handcuffing, even with significant force such as jerking the handcuffed individual's arm up to his shoulder, causing him to fall to his knees in pain, was not excessive force. Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002). The facts as Larson describes them with regard to the various incidents of handcuffing do not rise to a constitutional violation.

In addition, Larson's allegation that 27 Defendants in riot gear attacked him, or that 12 Defendants all forced him to the floor in a small HSA cell are not plausible. While the

16

Court understands the difficulty of reconstructing events years after they occurred, Larson must do more than allege that every Defendant present contributed to his injury. The Court will therefore disregard these utterly implausible allegations.

The Court is cognizant that whether the force used against a detainee is objectively reasonable usually "turns on the 'facts and circumstances of each particular case.'" Kingsley, 135 S. Ct. at 2473 (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). But even taking Larson's plausible allegations as true, it is clear that he has not stated a claim for excessive force. He admits that, in each of the situations described above, he was resisting correctional officers' commands. Thus, the use of some amount of force to gain compliance was unquestionably reasonable. See id. (noting that factors bearing on objective reasonableness of force include "whether the plaintiff was actively resisting"). And as discussed above, it is not plausible that the number of Defendants Larson has named in each incident were in fact involved in the alleged use of force. Moreover, the injuries Larson claims to have suffered are minor—bruising and pain—and are therefore a relevant factor in determining the reasonableness of the force used. See id. (another factor is "the extent of the plaintiff's injury"). Ultimately, the excessive-force determination turns on whether the actions of the officers were excessive in relation to a legitimate institutional purpose. Bell, 441 U.S. at 561. Taking Larson's plausible allegations as true, the Court finds that the actions he complains of were not excessive as a matter of law.

But even if there are questions of fact regarding whether Defendants used excessive force, they are entitled to qualified immunity on these claims. A person acting under color of state law "is entitled to . . . qualified immunity unless (1) the evidence, viewed in the

light most favorable to the nonmoving party, establishes a violation of a federal constitutional or statutory right, and (2) the right was clearly established at the time of the violation." Capps v. Olson, 780 F.3d 879, 884 (8th Cir. 2015). The relevant question for the application of qualified immunity is whether there are any cases "where an officer acting under similar circumstances as [the defendant] was held to have violated the [Constitution]." White v. Pauly, 137 S. Ct. 548, 552 (2017).

Although often resolved at summary judgment, the application of qualified immunity is appropriate based on Larson's allegations alone because, even taking his plausible allegations as true, there are no cases finding that the types of force allegedly used against him is constitutionally excessive. Indeed, the opposite is true: multiple decisions support the application of qualified immunity for the types of force Defendants allegedly used here. See, e.g., Blazek v. City of Iowa City, 761 F.3d 920, 923 (8th Cir. 2014) (grabbing plaintiff's arm, twisting it, and throwing him to the floor not excessive force); Wertish v. Krueger, 433 F.3d 1062, 1066-68 (8th Cir. 2006) (concluding that officer who "forcefully threw" passively resisting plaintiff to the ground, pinned plaintiff down, and put his weight on plaintiff's back before handcuffing him did not use excessive force); Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1082 (8th Cir. 1990) (finding no excessive force when plaintiff was twice pushed into a wall); Mahamed, 2009 WL 873534, at *3 (finding no excessive force when officer placed his knee on the handcuffed plaintiff's back); Blount v. Echols, No. 07cv5046, 2008 WL 4368936, at *8 (W.D. Ark. Sept. 24, 2008) (finding no excessive force when officers pushed plaintiff against the walled and pinned his head against the wall).

Defendants are entitled to qualified immunity, and Larson's excessive-force must be dismissed.

## G. Denial of Medical Treatment

Larson alleges that MSOP employees refused to treat the injuries he suffered in the incidents described above. (Id. ¶¶ 128, 132.) He thus appears to be raising a deliberate indifference claim. Such a claim requires Larson to plead that he suffered an objectively serious medical need and that Defendants knew of this need and deliberately disregarded it. See Jackson v. Buckman, 756 F.3d 1060, 1065 (8th Cir. 2014). An objectively serious medical need is "one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (quotation omitted). Larson's bruises and contusions do not rise to the level of a serious medical need. His claim therefore fails.

## H. State Claims and Service of Process

"[T]here is no private cause of action for violations of the Minnesota Constitution." Guite v. Wright, 976 F. Supp. 866, 871 (D. Minn. 1997) (Tunheim, J.). Thus, Larson's claims purporting to raise violations of Minnesota's Constitution are dismissed with prejudice. Having determined that all of Larson's federal claims must be dismissed for failure to state a claim, the Court declines to exercise supplemental jurisdiction over his remaining state-law claims and will dismiss those claims without prejudice. 28 U.S.C. § 1367(c)(3). Because the Court dismisses the Amended Complaint on the merits, it will not separately address Defendants' argument regarding insufficient service of process.

**CONCLUSION**

Larson has failed to state a claim on which relief can be granted for any violation of federal law, and the Court declines to exercise supplemental jurisdiction over his claims under state law. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss (Docket No. 53) is **GRANTED**;

2. Plaintiff's federal claims and claims under the Minnesota Constitution are **DISMISSED with prejudice** for failure to state a claim; and

3. Plaintiff's remaining state law claims are **DISMISSED without prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: July 9, 2018

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge